IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MEGHAN HARLEE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL NO.: 8:24-cv-03109-PX |
| | * | |
| CLARK CHENEY, | * | |
| | * | |
| Defendant. | * | |
| ********** | | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Clark Cheney, an employee of the United States International Trade Commission ("USITC"), by and through counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Alicia L. Shelton, Assistant United States Attorney for said District, respectfully submits the following memorandum of law in support of Defendant's motion to dismiss, or in the alternative, for summary judgment.

I. **INTRODUCTION**

The conduct giving rise to this case began on April 29, 2024, when Plaintiff Meghan Harlee was issued a notice of termination from federal employment at the USITC. In the months following her termination, Ms. Harlee began a campaign of harassing her former USITC coworkers, her former supervisors, and other federal personnel, including threats directed at Defendant Clark Cheney, Chief Administrative Law Judge for the USITC. Ms. Harlee also showed up at the USITC campus, sent emails to her former supervisors and other employees, left repeated voicemail messages on work phone numbers and Judge Cheney's personal cell phone, and she even menaced Judge Cheney by making groundless money demands through fund transfer requests from his personal Zelle account. In response to an email Ms. Harlee sent to Judge Cheney and Judge Doris

Johnson Hines on August 23, 2024, threatening to harm herself, Judge Cheney contacted the Montgomery County suicide prevention line and Montgomery County police for assistance. After Judge Cheney's attempt to ensure Ms. Harlee's safety, her harassing calls and threats escalated throughout September. At all times relevant to the issues giving rise to this litigation, Judge Cheney was acting within the scope of his job duties and responsibilities for the USITC.

On October 15, 2024, Ms. Harlee filed a petition for peace order in the District Court for Montgomery County, Maryland. *See* ECF No. 6. The state district court issued a Temporary Peace Order against Judge Cheney based on Ms. Harlee's claims, including that "authorities were contacted by Clark Cheney under false pretenses" and that on "April 29, 30, July 9, August 23 . . . [and] September 25, 2024" Judge Cheney "threatened [her] life and safety" and "stalked [her] relatives." *Id.*, at 1. The state district court also scheduled a hearing for October 22, 2024, to determine whether a Final Peace Order should be entered against Judge Cheney, which was continued to October 29, 2024. *See* ECF No. 1-3 at 2. On October 25, 2024, the case was removed to federal court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1442, which provides that a state court action is removable by an officer of the United States or any agency thereof, when an action is filed against an officer is related to an act under color of that official's office or in the performance of his duties. *See* ECF No. 1.

With jurisdiction to entertain this case conferred by the federal removal statutes, this Court should quash the state court order granting the Temporary Peace Order, deny Ms. Harlee a Final Peace Order, and dismiss the case, or in the alternative, grant summary judgment in favor of Judge Cheney at least because the action is barred by the doctrine of sovereign immunity.

2

## II.  STATEMENT OF FACTS

Clark Cheney, an employee of the USITC, is the Chief Administrative Law Judge ("ALJ") for the USITC. **Exhibit A** (Declaration of Clark Cheney ("Cheney Decl."), ¶¶ 2-3. Judge Cheney has held the position of Chief ALJ since February 2022 and before that time served as an ALJ at the USITC, at the Federal Energy Regulatory Commission, and at the U.S. Social Security Administration. *Id.*, ¶ 2. Judge Cheney is responsible for trial-level adjudication of alleged violations of section 337 of the Tariff Act of 1930. *Id.*, ¶ 2. As Chief ALJ, Judge Cheney is also the director of the Office of Administrative Law Judges ("OALJ") at the USITC, which includes a support staff and six judge teams. *Id.*, ¶ 3. Judge Cheney directly supervises five attorney advisor positions and two support staff positions on his work team; his duties also include monitoring and supporting the activities of other ALJs as they perform their supervisory roles for their respective work teams. *Id.*, ¶¶ 5-6. Each ALJ that Judge Cheney supervises directly supervises two attorney advisors and an administrative staff person; as direct supervisors, the ALJs under Judge Cheney are responsible for giving assignments, monitoring performance and discipling the staff that they directly supervise. *See id.*, ¶ 4.

In late 2023, Windsor Group LLC, a staffing agency, advanced Meghan Harlee to the USITC as a candidate for a contract employee position. *See* Cheney Decl., ¶ 8. The USTIC accepted Ms. Harlee as a Paralegal IV contract employee, whose employment was terminable at any time, could not exceed a one-year appointment and was not eligible for permanent employment. *Id.*, ¶¶ 8-9. Ms. Harlee reported to work at the USITC as a contract employee on September 26, 2023. *Id.*, ¶ 9. As a temporary contract Paralegal IV, Ms. Harlee supported Judge Johnson Hines and Judge MaryJoan McNamara. *Id.*, ¶ 9. During her time as a contract employee, Judge Cheney had a pleasant, collegial professional relationship with Ms. Harlee. *See id.*, ¶ 10.

During Ms. Harlee's contract employment, Ms. Harlee applied for a permanent competitive service Program Support Specialist position in OALJ, subject to a probationary period, which was in support of and supervised by Judge McNamara. *Id.*, ¶¶ 11-12. The conditions of the probationary period included that within a one-year period of the appointment, Ms. Harlee could be terminated for reasons of conduct or performance deficiencies, with limited appeal rights. *See* Cheney Decl., ¶ 11. Although it was Judge Cheney's role to ultimately approve the selection of Ms. Harlee for that position, he was not substantively involved in the hiring and selection process. *Id.*, ¶ 12. Judge McNamara selected Ms. Harlee for that position through the normal competitive procedures. *Id.* Ms. Harlee began in that role on March 24, 2024, subject to a probationary period of one year. *Id.*, ¶ 13. Ms. Harlee directly reported to Judge McNamara, who gave Ms. Harlee daily assignments and evaluated Ms. Harlee's performance. *Id.* Judge Cheney was present in the same office suite as Ms. Harlee but did not directly interact with Ms. Harlee in her duties as Program Support Specialist. *Id.*, ¶¶ 13-14.

On April 29, 2024, Judge Cheney was informed by Judge McNamara, Ms. Harlee's direct supervisor, that Judge McNamara would be issuing Ms. Harlee a notice of termination and that Ms. Harlee would be placed on administrative leave immediately, with no duties assigned until her separation date of May 3, 2024. *See* Cheney Decl., ¶¶ 15-16 and Exhibit 1 (Termination During Probationary Period, dated April 29, 2024 ("Termination Notice")). The proposed removal was based on Judge McNamara's conclusion that Ms. Harlee's work performance and conduct during the probationary period failed to demonstrate fitness or qualifications for continued employment. *Id.*, ¶ 15; Termination Notice at 1-3. Because Ms. Harlee was believed to not be in the office that day, she was instructed to return her laptop to the security guards at the front security desk of the USITC building the next day. *See* Cheney Decl., ¶ 16. Later that same afternoon, on April 29,

4

2024, Ms. Harlee walked into Judge Cheney's office and met with Judge Cheney for approximately an hour, during which Ms. Harlee expressed her anger and frustration regarding her termination and regarding Judge McNamara. *See id.*, ¶ 17. Judge Cheney attempted to console Ms. Harlee and confirm that Ms. Harlee was not considering self-harm because Ms. Harlee had expressed that she felt like she should give up on life. *Id.* After confirming that Ms. Harlee was not considering self-harm, Judge Cheney ended the meeting. *Id.* Approximately twenty minutes later, Judge Cheney left his office and encountered Ms. Harlee printing from a work computer despite being placed on administrative leave and not having an authorized reason to do so. Cheney Decl., ¶ 17. Because he was concerned about confidential business and/or case information being transported outside the agency, he consulted with Judge Johnson Hines and they agreed to ask a USITC security guard to come to the area. *Id.* In the presence of the security guard, Judge Cheney asked Ms. Harlee to stop printing and surrender her laptop, but Ms. Harlee refused. *Id.*

The next day, on April 30, 2024, when Ms. Harlee returned to retrieve personal items and surrender her work-issued laptop, Judge Cheney had a brief encounter with Ms. Harlee outside the building, but to avoid any conflict because Ms. Harlee appeared visibility agitated, Judge Cheney entered the building and returned to his office. *See id.,* ¶18. Federal Protective Service officers were called because Ms. Harlee was being disruptive and ultimately the Federal Protective Service officers escorted Ms. Harlee to her workstation to retrieve her belongings. *See id.* Judge Cheney was not involved in the decision to call Federal Protective Services and his encounter with Ms. Harlee outside the building on April 30, 2024, was the last time that Judge Cheney was in Ms. Harlee's presence for any reason. *Id.* Judge Cheney had no contact with Ms. Harlee of any kind between April 30, 2024, and August 23, 2024. *See id.*, ¶¶ 18, 29.

On Friday, August 23, 2024, Judge Cheney and Judge Johnson Hines received an email from Ms. Harlee stating that that she was upset with her supervisors at the USITC and her termination, and Ms. Harlee threatened suicide. Cheney Decl., ¶ 19. Because this was the first time that Judge Cheney had an issue with a former employee threatening suicide, he contacted the USITC Office of Security, the USITC Chair, the USITC Administrative Officer, and the USITC general counsel's office for guidance and intervention. *Id.*, ¶ 20. Judges Cheney and Johnson Hines also contacted the Montgomery County Crisis Center to request a welfare check for Ms. Harlee because they were concerned that Ms. Harlee may harm herself, and the Crisis Center directed them to call the Montgomery County Police. *Id.* Judges Cheney and Johnson Hines also attempted to call Ms. Harlee to see if she was okay, but the call went directly to voicemail so they left a message on Ms. Harlee's voicemail expressing concern and their desire to get Ms. Harlee help. *Id.* After the Montgomery County Police arrived at Ms. Harlee's residence on August 23, 2024, for the welfare check, the police called Judge Cheney and asked for the wording of Ms. Harlee's email before approaching, which Judge Cheney read to the officer over the phone. *Id.* Judge Cheney never spoke to Ms. Harlee on August 23 and did not have any contact with Ms. Harlee over the weekend. *Id.*, ¶ 21.

On Monday, August 26, 2024, Ms. Harlee called Judge Cheney. Cheney Decl., ¶ 22. Judge Cheney answered the call and took the phone into the office of Judge Johnson Hines so that she could participate in the call as well. *Id.* Judge Cheney informed Ms. Harlee that Judge Johnson Hines was on the phone with him. *Id.* Judge Cheney and Judge Johnson Hines told Ms. Harlee that they were concerned for her safety and discussed speaking with Ms. Harlee's mother for help. *See id.* Ms. Harlee accepted their offer to speak with Ms. Harlee's mother regarding her safety at some point in the future, and Ms. Harlee confirmed that she was not currently contemplating self-harm.

6

*Id.* Ms. Harlee did not arrange for the follow up call with Judge Cheney and Judge Johnson Hines as was discussed. *See id.*

On September 25, 2024, the USITC security office spoke with Ms. Harlee's father, but Judge Cheney had no involvement in the decision to contact Ms. Harlee's father, had no involvement in the contact with Ms. Harlee's father, and only became aware of the call between the USITC security office and Ms. Harlee's father after it had occurred. *Id.*, ¶ 27.

On October 15, 2024, Ms. Harlee sought, *ex parte*, a Temporary Peace Order from the District Court for Montgomery County, Maryland. *See* ECF No. 6. In her Petition for Peace Order, Ms. Harlee claimed that on "April 29, 30, July 9, August 23 . . . [and] September 25, 2024" Judge Cheney "threatened [her] life and safety" and "called the police . . . to spread a lie that [she] threatened another colleague with a gun." *Id.*, at 1, 6. Ms. Harlee further claimed that Judge Cheney "calls the police and tells them that [Ms. Harlee] in the house with a gun" and "that [she] is a gang member." *Id.*, at 6. Ms. Harlee also avers that she previously sought a peace order related to those acts, which the court denied. *Id.* Ms. Harlee claims that Judge Cheney "called the police again on September 25, 2024." *Id.* Based on Ms. Harlee's claims in her Petition for Peace Order, the District Court for Montgomery County, Maryland issued a Temporary Peace Order. *See* ECF No. 14-4. Although, under Maryland state law, a district court judge issuing a Peace Order must tailor the Peace Order to that which is minimally necessary to protect the petitioner, the state court prohibited Judge Cheney from committing or threatening any act causing serious bodily harm, placing Ms. Harlee in fear of imminent serious bodily harm, assault, rape, attempted rape, sexual offense, or attempted sexual offense, false imprisonment, harassment, stalking, trespass, or malicious destruction of property, misuse of telephone facilities and equipment, misuse of electronic communication or interactive computer service, revenge porn, visual surveillance, from contacting

7

or attempt at contacting Ms. Harlee in person, by telephone, in writing, or by any other means, and from entering the residence and to stay away from Ms. Harlee's residence, wherever located. *See id.* The state district court also scheduled a hearing for October 22, 2024, to determine whether a Final Peace Order should be entered against Judge Cheney, which was continued to October 29, 2024. *See id.*; ECF No. 14-3 at 1. On October 28, 2024, the state district court entered a Temporary Peace Order (Modified), extending the temporary order until November 12, 2024. *See* ECF No. 14-5. Judge Cheney was notified that Ms. Harlee had filed a petition for peace order on October 18, 2024, and received a copy of it on October 28, 2024. Cheney Decl., ¶ 23. Judge Cheney has not been properly served. The case was removed to this Court on October 25, 2024. *See* ECF No. 1.

### III.  ARGUMENT

#### A. Motions to Dismiss and Summary Judgment--The Legal Standards

Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) are appropriately granted where a claim fails to allege facts upon which the court may base jurisdiction. *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). Further, a federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)). If a defendant challenges jurisdiction under Rule 12(b)(1), then the plaintiff bears the burden of persuasion, and the court is free to consider exhibits outside the pleadings to resolve factual disputes concerning jurisdiction. *Smith v. Washington Metropolitan Area Transit Authority,* 290 F.3d 201, 205 (4th Cir. 2002); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (in considering exhibits outside pleadings, court "is free to weigh

the evidence and satisfy itself as to the existence of its power to hear the case") (internal quotation omitted)).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the evidence. *District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979). For purposes of a dismissal motion the court accepts as true the well-pleaded allegations of the complaint, *Byrd v. Gate Petroleum Co.*, 845 F.2d 86, 87 (4th Cir. 1988), but the court need not accord as truth inferences or conclusions unsupported by allegations of specific facts. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.), *cert. denied,* 479 U.S. 1009 (1986). Nor is the court obligated to treat as truth legal conclusions disguised as factual allegations. *Wellmore Coal Corp.*, 609 F.2d at 1085-86. A complaint unsupported by specific factual allegations to support a viable claim should be dismissed, as should a complaint that is not plausible on its face. *See id.; see also See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint that is not "plausible on its face" must be dismissed). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Stated another way, if a party fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden at trial, summary adjudication is warranted. *Celotex*, 477 U.S. at 322. Indeed, only disputed issues of material fact will defeat summary judgment. A fact is material for purposes of summary judgment when, if applied to the substantive law, affects the outcome of the litigation. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). The movant for summary judgment need not support its motion with evidence

negating the opponent's case; rather, the movant may satisfy its burden by showing that there is an absence of evidence to support the nonmovant's case.[1] *Id.*

If that showing is made, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Celotex*, 477 U.S. at 325. "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (same). The party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003). Courts are obliged to prevent factually unsupported claims and defenses from proceeding to trial. *Id.* at 526. Here, the case should be dismissed under either standard because the cause of action is barred by the doctrine of sovereign immunity and, in any event, Ms. Harlee's petition does not support a Peace Order under Maryland law.

### B. Removal and Subject Matter Jurisdiction

Courts must dismiss a claim when they conclude that subject matter jurisdiction is lacking. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998). This applies upon removal of a case from state court to federal court regardless of whether the removal is effectuated under 28 U.S.C. § 1441, the general removal statute, or 28 U.S.C. § 1442(a)(1), the federal officer removal

---

[1] Under Federal Rule of Civil Procedure 12(d) "a Court may convert a motion to dismiss to one for summary judgment and consider matters outside the pleadings," where the parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." *See U.S. Equal Emp't Opportunity Comm'n v. Phase 2 Invs. Inc.*, 310 F. Supp. 3d 550, 560 (D. Md. 2018) (citing Fed. R. Civ. P. 12(d)). When, "the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur." *Id.*

statute. Here, the state court case was removed under §§ 1441 and 1442(a)(1). Regardless of whether removal was effectuated under § 1441 or § 1442(a)(1), the Court lacks subject matter jurisdiction to adjudicate the case because of the doctrine of sovereign immunity.

### C. The Doctrine of Sovereign Immunity Bars This Action.

The instant case involves Ms. Harlee's claims that on "April 29, 30, July 9, August 23 . . . [and] September 25, 2024" Judge Cheney "threatened [her] life and safety" and "stalked [her] relatives." *See* ECF No. 6, at 1. Ms. Harlee also claimed that Judge Cheney "purposely called police on April 29, 30, July 9, August 23 and September 25, 2024 to spread a lie that [Ms. Harlee] threatened another colleague with a gun" and that Judge Cheney "has told police that [Ms. Harlee] is a gang member." *Id.*, at 4.

As set forth above, at all times relevant here, Judge Cheney was acting in his role as the office director of the OALJ and Chief ALJ. *See* Cheney Decl., ¶¶ 2-6. Judge Cheney's interactions with Ms. Harlee on April 29 and 30, 2024, were on the USITC campus and were directly related to her termination from employment in the OALJ. *See id.*, ¶¶ 15-18. Judge Cheney has never seen or spoken to Ms. Harlee after her termination, with the exception of August 23, 2024, and August 26, 2024, when Judge Cheney acted in response to Ms. Harlee reaching out to him with a threat of suicide. At all times, Judge Cheney was acting within the scope of his official duties and he is, effectively, being sued for an act undertaken in his official capacity.

Sovereign immunity bars suits against the government and government officials in their official capacity because a suit against officers acting in their official capacity "effectively operate against the sovereign itself." *Lancaster v. Sec'y of Navy*, 109 F.4th 283, 292 (4th Cir. 2024). An "[o]fficial capacity suit" is merely "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New*

11

*York City Dept. Of Social Servs.*, 436 U.S. 658, 690 (1978)); *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). A party seeking to sue the United States bears the burden of demonstrating that a specific statutory provision expressly waives the government's sovereign immunity from suit because sovereign immunity bars all suits against the United States other than those authorized by federal legislation. *See Lancaster*, 109 F.4th at 293; *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Unless Congress has consented to a cause of action against the United States, there is no jurisdiction in any court. *Sherwood*, 312 U.S. at 587-88. Waivers of sovereign immunity must be "unequivocally" set forth "in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Furthermore, waivers of sovereign immunity, and the conditions on any waiver, must be strictly construed in favor of the sovereign. *Lancaster*, 109 F.4th at 293; *Orff v. United States*, 545 U.S. 596, 602 (2005). No waiver of sovereign immunity exists for the instant cause of action and Ms. Harlee has identified none. *See Richards v. Wallace*, No. CIV WDQ-09-2188, 2009 WL 4884524, at *3 (D. Md. Dec. 10, 2009) ("When a federal employee raises sovereign immunity, it is the plaintiff's burden to show that the action should not be treated as against the United States or that a waiver of sovereign immunity applies."). The United States has not waived its sovereign immunity for actions undertaken by a federal official acting within the scope of her authority, as is the case here.

Although the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, provides a limited waiver of the United States's sovereign immunity from suits sounding in tort and where a private person would be liable to the claimant in accordance with the law of the place, the FTCA's waiver of sovereign immunity is not applicable here. First, the FTCA only applies to suits seeking monetary damages and Ms. Harlee's claim does not. *See* 28 U.S.C. § 1346(b)(1); *Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014) (unreported); *Talbert v. United States*, 932 F.2d 1064, 1065-

12

66 (4th Cir. 1991). Second, Ms. Harlee's Peace Order Petition alleges that Judge Cheney's purported conduct was intended to "place [her] in reasonable fear of serious bodily injury or death," which could be construed as an allegation of the "putting-in-fear" variety of assault, *see* ECF No. 6 at 3, but the FTCA specifically exempts from its waiver of sovereign immunity "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Moreover, although an exception to the doctrine of sovereign immunity may lie where a plaintiff seeks injunctive or declaratory relief against employees of federal agencies, *see* 5 U.S.C. § 702, one may not enjoin a federal official who, as is the case here, acts either within his or her statutory authority or within constitutional constraints. *TransAmerica Assur. Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 260 n.2 (6th Cir. 2007).

At all times alleged in Ms. Harlee's Petition for Peace Order, Judge Cheney was acting in his role as Chief ALJ and the office director for the OALJ. On April 29, 2024, Judge Cheney was notified by his supervisee, Judge McNamara, that she would be terminating the employment of Judge McNamara's supervisee, Ms. Harlee. *See* Cheney Decl., ¶ 15. Ms. Harlee approached Judge Cheney to discuss her termination and frustration with her supervisor, Judge McNamara. *See id.*, ¶ 17. After the discussion with Ms. Harlee, Judge Cheney encountered Ms. Harlee printing from an office computer after she had been placed on administrative leave, and out of concern for the potential unauthorized release of confidential business information, Judge Cheney consulted with the other Judge present in the building and asked USITC security to come to the area. *See id.* On April 30, 2024, Judge Cheney's only interaction with Ms. Harlee was in front of the USITC building, where he left Ms. Harlee's presence to avoid any conflict. *Id.*, ¶ 18. Judge Cheney's interactions with Ms. Harlee on April 29 and April 30, 2024, were related to her employment and

termination within the scope of his duties as the Chief ALJ. *See id.*, ¶ 24. Subsequently, Judge Cheney had no contact with Ms. Harlee or anyone on her behalf on July 9, 2024, and indeed, did not have any interaction with Ms. Harlee between April 30 and August 23, 2024. *See id.*, ¶¶ 18, 25, 29. Additionally, Judge Cheney's interactions with Ms. Harlee on August 23 and August 26, 2024, resulted from Ms. Harlee contacting Judge Cheney to reiterate her upset at her termination from the USITC and to threaten self-harm. *Id.*, ¶¶ 19-22, 26. Relatedly, Judge Cheney's contacts with the Montgomery County Crisis Center and the Montgomery County Police Department on August 23, 2024, were also because of Ms. Harlee's email threatening self-harm. *See* Cheney Decl., ¶¶ 20-22. Judge Cheney was not involved in the September 25, 2024, phone call to Ms. Harlee's father and did not know about it until after it had occurred. *See id.*, ¶ 27.

Here, at all times relevant to Ms. Harlee's claims, Judge Cheney was acting in his official capacity and there has been no waiver of sovereign immunity for her claims. This Court lacks subject matter jurisdiction over the action and the Temporary Peace Order must be quashed and the bid for a Final Peace Order must be dismissed as barred by the doctrine of sovereign immunity.

**D. There Is No Plausible Claim Supporting a Peace Order under Maryland Law.**

Even if sovereign immunity was not an absolute bar to Ms. Harlee's claims, Ms. Harlee has failed to sufficiently allege a petition for peace order under Rule 12(b)(6), thereby warranting dismissal of her complaint. Under Maryland law, a peace order cannot issue unless the petition alleges an "act occurred within 30 days before the filing of the petition" that meets the statutory requirements. Md. Code, § 3-1503. Here, Ms. Harlee alleges no such specific act involving Judge Cheney that occurred within 30 days prior to her October 15, 2024, petition. Ms. Harlee alleges acts on "April 29, 30, July 9, August 23 . . . [and] September 25, 2024." *See* ECF No. 6, at 1, 4. The acts that Ms. Harlee alleges to have occurred on April 29, April 30, July 9, and August 23

14

cannot support a peace order because they occurred more than 30 days before her October 15, 2024 petition. Md. Code, § 3-1503. As for the September 25 allegations, although Ms. Harlee generally alleges that Judge Cheney "stalked [her] relatives" and "called the police again," she fails to allege any specific, plausible allegation that Judge Cheney harassed Ms. Harlee on that date. *See* ECF No. 6 at 1, 4. Indeed, Judge Cheney had no interaction with Ms. Harlee—nor did he talk with police or anyone else about Ms. Harlee—on that date. *See* Cheney Decl., ¶ 27. Without specific, plausible facts sufficient to merit relief under the Maryland peace order statute, the petition must be dismissed. *See Twombly*, 550 U.S. at 570 (a complaint that is not "plausible on its face" must be dismissed). Nor could Ms. Harlee meet her burden under Rule 56 to show that summary judgment is inappropriate. *Celotex*, 477 U.S. at 325. "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (same). As the Cheney Declaration makes clear, Judge Cheney did not see, speak to, or interact with Ms. Harlee, or the police, for well over 30 days prior to her October 15, 2024, petition. *See* Cheney Decl., ¶ 27.

IV. **CONCLUSION**

For the foregoing reasons, the Defendant respectfully requests that the Court grant the Defendant's motion to dismiss, or alternatively, for summary judgment.

    Respectfully submitted,

    Erek L. Barron
    United States Attorney

          */s/ Alicia Shelton*
Alicia L. Shelton (Bar No. 11538)
Assistant United States Attorney
36 S. Charles St., 4th Fl.
Baltimore, MD 21201
410-209-4800
Alicia.Shelton2@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of November 2024, I caused a copy of the foregoing to be filed on all parties of record via CM/ECF.

          */s/ Alicia Shelton*
Alicia L. Shelton
Assistant United States Attorney