# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MEGHAN HARLEE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL NO.: 8:24-cv-03109-PX |
| | * | |
| CLARK CHENEY, | * | |
| | * | |
| Defendant. | * | |

**********

## DECLARATION OF CLARK CHENEY

I, Clark Cheney, declare and state as follows:

1. I am over the age of eighteen. The following is based on my personal knowledge of the matters described herein. If called upon as a witness, I could and would testify to the matters described herein.

2. Currently, I hold the position of Chief Administrative Law Judge for the United States International Trade Commission ("USITC"). I am responsible for trial-level adjudication of alleged violations of section 337 of the Tariff Act of 1930 and for overseeing five other federal administrative law judges and staff at the USITC who perform similar work. I have held this position since February 2022. I was first appointed as an administrative law judge at the USITC in 2018. Prior to that time I served as an administrative law judge at the Federal Energy Regulatory Commission and the U.S. Social Security Administration.

3. In my capacity as Chief Administrative Law Judge, I am the office director of the Office of Administrative Law Judges (OALJ) at the USITC, which has an allocated headcount of 28 employees. The office is primarily composed of six judge teams, each with one administrative

law judge, two attorney advisors, and one administrative support staff member. A handful of other employees support the operation of the office as a whole.

4. Each administrative law judge is the direct supervisor of two attorney advisors and an administrative support person. As supervisor, each administrative law judge is responsible for direct oversight of the employees on the judge's team, including selecting the employee for hiring, assigning work to the employee, monitoring the employee's performance on assignments, monitoring the employee's time and attendance and conduct, and, if necessary, disciplining the employee and terminating the employee.

5. As Chief Administrative Law Judge, I monitor and support the activities of the other judges as they perform their supervisory roles. I am not directly involved in day-to-day assignments given by judges to the employees they supervise, nor am I directly involved in monitoring performance or conduct of employees directly supervised by other judges.

6. I directly supervise five attorney advisor positions and two support staff positions. I approve and certify time and attendance for other judges and the attorneys and staff I directly supervise.

7. Over the course of the last year, OALJ has utilized temporary contract employees to fill certain support staff roles while recruiting candidates to fill the positions permanently.

8. In 2023, multiple support staff positions in OALJ were vacant. While permanent recruiting proceeded, the USTIC entered into a contract with a staffing agency, Windsor Group LLC, to provide a candidate meeting Paralegal IV qualifications. The staffing agency provided the resume of Meghan Harlee, which appeared to show she had the relevant qualifications for the position, and USITC accepted Ms. Harlee as a Paralegal IV contract employee.

2

9. On September 26, 2023, Ms. Harlee reported to the USITC for her first day as a contract employee. The contract employee position Ms. Harlee held was terminable at any time, could not exceed a one-year appointment, and was not eligible for permanent employment. From September 26, 2023, until March 22, 2024, Ms. Harlee served as a temporary contract Paralegal IV, supporting Administrative Law Judge Doris Johnson Hines and Administrative Law Judge MaryJoan McNamara.

10. During Ms. Harlee's tenure as a contract employee, I had a pleasant, collegial relationship with Ms. Harlee. I was unaware of any concerns about Ms. Harlee's ability to complete her work timely or about her compliance with agency policies.

11. Also during Ms. Harlee's tenure as a contract employee, she applied for a permanent competitive service Program Support Specialist position in OALJ, subject to a probationary period. As is mandated for new entrants like Ms. Harlee to a competitive service position, the conditions of the probationary period included that within a one-year period of the appointment, she could be terminated for reasons of conduct or performance deficiencies, with limited appeal rights.

12. The Program Support Specialist position that Ms. Harlee applied for was in support of, and supervised by, Judge McNamara, with whom Ms. Harlee had worked closely for several months in her contractor role. To my knowledge, Judge McNamara selected Ms. Harlee for the position through the normal competitive hiring procedures. Although as the office director of OALJ it was my role to ultimately approve of Judge McNamara's selection of Ms. Harlee for that position, I was not substantively involved in those hiring and selection processes.

13. On March 24, 2024, Ms. Harlee commenced her competitive service appointment at the USITC as Program Support Specialist, OALJ, subject to a probationary period of one year.

Ms. Harlee directly reported to Judge McNamara and received daily assignments from Judge McNamara. Judge McNamara approved Ms. Harlee's time and attendance and was responsible for grading Ms. Harlee's performance. Ms. Harlee did not directly report to me for assignments or duties. As Chief Administrative Law Judge, I was often present in the same office suite with Ms. Harlee, but I did not directly interact with Ms. Harlee in her duties.

14. As a Program Support Specialist, Ms. Harlee's duties included, among other duties, maintaining and disposing of records, exhibits, and case files as directed; proofreading and reviewing citations in legal documents; filing orders and other judicial writing; tracking filing dates, response deadlines, and the disposition of motions; maintaining time and attendance records for certain staff.

15. On April 29, 2024, Judge McNamara alerted me, as the OALJ office director, that Judge McNamara, in her capacity as Ms. Harlee's direct supervisor, would be sending a notice of termination to Ms. Harlee. At or around 2:11p.m., Judge McNamara sent Ms. Harlee a termination notice with notification that Ms. Harlee would be placed on administrative leave immediately with no duties. The termination notice is attached to this declaration as "Exhibit 1." The proposed removal was based on Judge McNamara's conclusion that Ms. Harlee's work performance and conduct during the probationary period failed to demonstrate fitness or qualifications for continued employment, as detailed in the notice.

16. Ms. Harlee was placed on administrative leave with no duties on April 29, 2024, until her separation date of Friday, May 3, 2024, with instructions to return her laptop to the security guards at the front security desk of the USITC building the next day. It is my understanding that Ms. Harlee was given until the next day to return her laptop because it was

believed she was not present in the USITC building on the day she received the termination notice, April 29, 2024.

17. I was surprised when Ms. Harlee walked into my office the same afternoon that she received her termination notice because I did not understand her to be present in the USITC building on April 29. When she entered my office, she appeared upset. I spoke to Ms. Harlee for approximately an hour, during which time Ms. Harlee expressed anger and frustration about her termination and with Judge McNamara. Ms. Harlee stated that she felt like she should give up on life. I attempted to console Ms. Harlee and ensure that she was not considering self-harm. After Ms. Harlee confirmed that she was not considering self harm, I ended the meeting and Ms. Harlee left my office. Approximately twenty minutes later, I left my office and I encountered Ms. Harlee printing from an office computer. Ms. Harlee had already been placed on administrative leave, although her network access had not yet been terminated, and she had no official purpose or other legitimate reason to be printing. I became concerned that confidential business information related to cases or similar restricted information or documents was at risk of being transported outside agency control. I consulted with the only other judge present in the building at the time, Judge Doris Johnson Hines. Judge Johnson Hines and I agreed that we would ask USITC security to come to the area where Ms. Harlee was printing. In the guard's presence, I asked Ms. Harlee to stop printing and surrender her laptop. Ms. Harlee refused and the stand-off continued for quite some time. Eventually Ms. Harlee left the building without surrendering her work laptop and badge.

18. On April 30, 2024, Ms. Harlee came to the USITC building to return her laptop. Because of the incident the afternoon before, the USITC security guards did not allow Ms. Harlee to enter the building. I was returning from a coffee shop at the same time and encountered Ms.

Harlee by the front door to the building. Ms. Harlee was upset and stated that her personal property was not returned to her. I attempted to help, but when Ms. Harlee became visibility agitated and upset, I left her presence to return to my office and to avoid any conflict. Security officers prevented Ms. Harley from entering the building behind me. I was informed that Federal Protective Services had been called because Ms. Harlee remained outside the front of the building arguing with the guards. I was not involved in the decision to call Federal Protective Services. I later saw Federal Protective Service escort Ms. Harlee to her workstation. That day, April 30, 2024, was the last time that I was in Ms. Harlee's presence for any reason.

19. On Friday, August 23, 2024, at 5:53 a.m., I received an email from Ms. Harlee addressed to me and to Judge Johnson Hines threatening suicide. Ms. Harlee's email expressed that she was upset due to her termination from the USITC and that she felt that her life did not matter. Ms. Harlee stated that she felt that she would not be able to get another job with the termination on her record, that she was upset at not being allowed back inside the USITC premises after her termination, that she blamed me and Judge McNamara, and that she felt that life was not worth living. Ms. Harlee said that she would be ending her suffering and that she hoped we would learn something from her absence. Based on the letter, Judge Johnson Hines and I were concerned that Ms. Harlee may harm herself.

20. Because I was concerned for Ms. Harlee's safety and had never had an issue like this arise before, after the phone call ended with Ms. Harlee, I contacted the USITC Office of Security, the USITC Chair, the USITC Administrative Officer, and the USITC general counsel's office for guidance and intervention. Judge Johnson Hines and I also called the Montgomery County Crisis Center to request guidance about how to respond to the situation. The Montgomery County Crisis Center told us that the Montgomery County Police should be contacted to conduct

a welfare check. Following that guidance, I placed a call to the Montgomery County Police for a welfare check on Ms. Harlee. Judge Johnson Hines and I also attempted to call Ms. Harlee to see if she was okay. The call to Ms. Harlee went directly to voicemail and Judge Johnson Hines and I left a message expressing our concern for her safety and our desire to get her help. The Montgomery County Police called me when they arrived at Ms. Harlee's address and asked for the wording of her email before making the approach, which I read to the officer over the phone.

21.     Later that same day, I was told that the Montgomery County Police were unable to make contact with Ms. Harlee.  I did not hear back from Ms. Harlee all weekend.

22.     On Monday, August 26, 2024, Ms. Harlee called my personal cell phone, from which I had called her on the morning she threatened suicide. Because I was concerned for Ms. Harlee's safety in light of her August 23, 2024, email threatening suicide, I answered the call and went into Judge Johnson Hines' office so Judge Johnson Hines could witness and participate in the call. I put the phone on speaker and I informed Ms. Harlee that Judge Johnson Hines and I were both on the call. Judge Johnson Hines and I both spoke to Ms. Harlee. We told Ms. Harlee that we were extremely concerned for her safety and asked if she had family members that she could go to for support. Ms. Harlee told us that she had not told her mother about the email threatening suicide. Judge Johnson Hines and I offered to speak to her mother for her if that would be helpful. Ms. Harlee said that she would set a date and time for a call when Ms. Harlee, her mother, Judge Johnson Hines, and I could all have a call together to discuss Ms. Harlee's safety and well-being. Ms. Harlee said that she was not currently contemplating self-harm and confirmed that she would not harm herself before we all had an opportunity to talk together. The phone call lasted approximately forty minutes. Ms. Harlee never arranged a follow up call with her mother.

23. On October 18, 2024, I became aware that Ms. Harlee had filed a petition for a peace order against me in the District Court of Maryland for Montgomery County. I was not provided with the paperwork at that time. On October 28, 2024, I received a copy of the petition that Ms. Harlee filed in the District Court of Maryland for Montgomery County. According to the peace order paperwork, Ms. Harlee alleges that on April 29 and 30, 2024, July 9, 2024, and August 23, 2024, I threatened her life. I have never threatened Ms. Harlee's life. To the contrary, I have attempted to preserve it.

24. As I described above, my interactions with Ms. Harlee on April 29 and 30, 2024, were entirely proper and conducted entirely within my duties as the Chief Administrative Law Judge for the USITC, an officer of the United States government, and an employee of the USITC.

25. I did not see or speak to Ms. Harlee on July 9, 2024. I do not know what the significance of that date is.

26. On August 23, 2024, and on August 26, 2024, Ms. Harlee contacted me and threatened self-harm. My only interactions with Ms. Harlee on those dates were the result of her contacting me, not me contacting her. My interactions with Ms. Harlee on those dates directly related to actions taken in my capacity as the Chief Administrative Law Judge for the USITC and out of concern for the life and safety of Ms. Harlee.

27. According to the original peace order paperwork, Ms. Harlee also alleges that I attempted to contact her relatives on September 25, 2024. I did not see or speak to Ms. Harlee or any of her family members on September 25, 2024. I became aware after the fact that the USITC security office spoke with Ms. Harlee's father on September 25, 2024, but I had no involvement in any decision to contact Ms. Harlee's father and no involvement in the contact with Ms. Harlee's father.

8

28. In subsequent court papers, I understand Ms. Harlee makes reference to October 15, 2024. I did not see or speak to Ms. Harlee on October 15, 2024. I do not know what the significance of that date is.

29. Other than Ms. Harlee contacting me regarding her threats of self-harm in August 2024, I have not seen or spoken to Ms. Harlee since April 30, 2024.

30. The peace order paperwork also states that I have told police that Ms. Harlee has a gun and that she has threatened a colleague with a gun. I have never told the police that Ms. Harlee has a gun or that she has threatened a colleague with a gun.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____  
Clark S. Cheney  
Chief Administrative Law Judge

<u>November 18, 2024</u>  
Date

# EXHIBIT 1



**Office of the Administrative
Law Judges**

## UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

TO:        Meghan Harlee
             Program Support Specialist
             GS-11, Step 1

FROM:    MaryJoan McNamara
             Administrative Law Judge
             Office of Administrative Law Judges

DATE:     April 29, 2024 (Transmittal Date)

SUBJECT:  Termination During Probationary Period

This memorandum notifies you of my decision to terminate your employment during the probationary period, in accordance with 5 C.F.R. Part 315, Subpart H. In sum, I have concluded that your work performance and conduct during the probationary period has failed to demonstrate your fitness or qualifications for continued employment.

This termination action will be effective close of business on **Friday, May 3, 2024**. Until the effective date of the Termination notice, you will be placed on administrative leave. Administrative leave is a pay status, with no duties. Your PIV card, and Government Property should be turned in at the Security Desk to the Security guards by noon on Tuesday, April 30, 2024. If you have any questions regarding the process outlined, please contact the Employee Relations Specialist using the contact information contained within this Termination notice.

On **March 24, 2024**, you were appointed by the United States International Trade Commission (USITC or Commission) to the Office of Administrative Law Judges (OALJ), as a Program Support Specialist (PSS), GS-11, Step 1. About that time, you were informed that your appointment was subject to the satisfactory completion of a one-year probationary period, beginning on March 24, 2024.

1

Your appointment is being terminated during the probationary period for the following reasons:

- While previously working as a Contractor, you were given a task, starting on or about March 13, 2024, to work with Dockets to clear out exhibits from the 1130 Investigation that were in the back storage room of OALJ. The exhibits include small beer kegs and apparatus involving the same. This assignment continued after you were hired as a Program Support Specialist. You were then given a deadline of April 9, 2024, to identify the exhibits, fill out the form Dockets requested, and copy me on the completion of the Dockets form and the task assigned. As of April 18, 2024, the exhibits (beer kegs and apparatus) in the OALJ storage room had not been cleared out of OALJ.

- During an April 3, 2024 Staff Check-in meeting, one of the members of our Team, an Attorney-Advisor raised immediate concerns about your tone of voice and the way in which you spoke to them and to me during that Staff Check-in meeting. Your tone of voice was contentious and unprofessional.

- During a meeting with me on April 5, 2024, you called me "paranoid." I found this to be disrespectful and unprofessional.

- During a Staff Check-in meeting on April 8, 2024, I asked you about the status of the filing of Order Nos. 2, 3 and 4 in the 1395 Investigation. After asking you typical follow up questions about which orders had been filed and which had not, you called my attempts to find out the status of the filings "offensive." One of my Team raised concerns to me about your tone of voice and called your responses to my questions evasive and unprofessional. That raised concerns about your ability to complete and account for assignments without creating conflict.

- You have failed to follow procedures, by among other things, routinely failing to respond to my e-mails, or the status of tasks you have been assigned consistent with standard operating procedures (SOPS) which are in place, among those sent to you on or about March 27, 2024. Among the e-mails to which you failed to respond, was a procedure by which you, as the timekeeper, were asked to inform me that time has been validated so I could certify my subordinates' time and attendance in a timely way. You did not respond to my e-mail request on April 19, 2024.

- You have been late to regularly scheduled Staff (i.e., Check-in) meetings, which are noted on our Shared Calendar, among them on April 8 and 9, 2024, and including for an individual Check-in meeting with

2

you on April 9, 2024. Members of our Team, including me, had to look for you.

Additionally, because of examples of your conduct and performance deficiencies, identified above, among others, I have received negative feedback and concerns from other members of my Team about interacting with you. Also, you frequently failed to respond to other status reports on work assignments and to respond to deadlines. You have demonstrated poor organizational skills, and at times an apparent disregard of the requests made to you consistent with the SOPS in place.

During your probationary tenure, I have pointed out problems with your conduct and work follow through. You have mischaracterized some of that feedback and responded with unprofessional and oppositional rejoinders.

Overall, your performance and conduct during the probationary period has not given me confidence in your ability to successfully undertake necessary duties and assignments of an incumbent in the Program Support Specialist position. Therefore, I have decided to terminate your employment during the probationary period.

**<u>NOTICE OF APPEAL RIGHTS</u>**

You have the right to contest this action through one or another of the avenues of redress outlined below. If you file under more than one procedure, the procedure under which you timely filed first shall be considered your elected procedure, in some instances to the exclusion of any other forum. Consequently, you should read the entire notice with due care.

<u>MSPB Appeal</u>. You may appeal this action to the U.S. Merit Systems Protection Board (MSPB), but only if you believe that it was based on partisan political reasons or marital status.

Note that if you timely file an appeal of this action to the MSPB as set forth below, you will waive your right to file a complaint alleging a prohibited personnel action with the Office of Special Counsel (including a complaint on whistleblower reprisal), or an Equal Employment Opportunity complaint with the agency, on the same matter. However, you may allege discrimination claims in such an appeal to the MSPB, provided that your appeal also includes claims of partisan political reasons or marital status (e.g., that your termination was also based upon race, color, religion, national origin, sex (including pregnancy and gender identity), age (as defined by the Age Discrimination in Employment Act of 1967, as amended), disability, protected genetic information, and/or by prior EEO activity).

If you wish to file such an MSPB appeal, you may obtain information about the

appeals process and a copy of the appeals form from the MSPB website at http://www.mspb.gov/appeals/appeals.htm. Copies of the applicable MSPB regulations, 5 C.F.R. Part 315, Subpart H (§§ 315.801 to 315.806), are enclosed for your reference. You have a right to representation in an appeal matter, including by an attorney or other person of your choosing, at no expense to the government.

Your appeal to the MSPB may be submitted through either the "e-Appeal" process (on-line at the following: https://e-appeal.mspb.gov/), or you may file your appeal (copy of appeal form enclosed) by personal delivery, fax, mail, or commercial delivery, addressed to the following:

U.S. Merit Systems Protection Board
Washington DC Regional Office
1901 S. Bell Street, Suite 950
Arlington, Virginia 22202
(703) 756-6250 - telephone
(703) 756-7112 – fax

Any such MSPB appeal must be filed no later than 30 days after the effective date of the action or 30 days after your receipt of this decision, whichever is later. If your appeal is not submitted within said 30-day limit, it may be dismissed as untimely, unless good reason for the delay is shown. Specific details regarding timeliness are set forth in 5 C.F.R. § 1201.22 (again, the MSPB's regulations may be accessed at http://www.mspb.gov - if you cannot access the MSPB website, you may request copies of the regulations from the agency contact listed in the next paragraph).

You should notify the MSPB that the agency contact for your appeal is as follows:

Charles F. Smith, Staff Attorney
Office of the General Counsel
United States International Trade Commission
500 E Street, S.W.
Washington, DC 20436
charles.smith@usitc.gov
telephone: (202) 205-3408
facsimile: (202) 205-3111

U.S. Office of Special Counsel (OSC). You may seek corrective action on this decision by filing a complaint with the OSC, alleging a prohibited personnel practice, including "whistleblowing." More information about OSC procedures can be found at www.osc.gov.

Note that if you seek such corrective action through OSC before filing an appeal

4

with the MSPB as set forth above, you may not subsequently file an Individual Right of Action appeal to the MSPB on any issue related to this decision, <u>other than</u> whether the agency took any covered personnel action(s) against you in retaliation for your protected whistleblower disclosure(s).

<u>U.S. Equal Employment Opportunity Commission (EEOC)</u>. If you believe this action is motivated by discrimination based on any protected basis, including race, color, religion, national origin, sex (including pregnancy and gender identity), age (as defined by the Age Discrimination in Employment Act of 1967, as amended), disability, protected genetic information, and/or by prior EEO activity, you have the right to file a complaint of employment discrimination under 5 C.F.R. Part 1614. A copy of the EEOC's regulations and pertinent procedures can be found at www.eeoc.gov.

Note that if you choose to file an EEO complaint, you will waive your right to file an appeal to the MSPB on the same matter (see above discussion under "MSPB Appeal"), consistently with the provisions of 29 C.F.R. §§ 1614.301 and 1614.302. An election to proceed under this part is indicated only by the filing of a written EEO complaint; use of the pre-complaint process described in § 1614.105 does not constitute an election for this purpose.

To pursue a complaint through the EEO procedures under the provisions of 29 C.F.R. Part 1614 or Executive Order 11478, as amended, you must first contact the USITC's Office of Equal Employment Opportunity (OEEO), for purposes of seeking EEO counseling, within 45 days of the effective date of this action. You can reach the OEEO at (202) 205-2239.

---------------------

Please note that the USITC has an Employee Assistance Program (EAP) which offers confidential consultation services to help address difficult situations that may be affecting work, personal or family interactions. If you have not already been in contact with an EAP counselor, you are encouraged to do so by calling 1-800-222-0364.

If you have any further questions concerning this notice, please feel free to contact Tiffany Clemmons, at tiffany.clemmons@usitc.gov, or (202)205-2608.

MARY JOAN MCNAMARA  
Digitally signed by MARY JOAN MCNAMARA  
Date: 2024.04.29 12:13:58 -04'00'  
_____          April 29, 2024
Supervisor                                     Date

Enclosures:
 1. MSPB Regulations
 2. MSPB Appeal Form
 3. EAP Contact Form

5